SEEGER WEISS LLP
CHRISTOPHER L. AYERS
55 Challenger Road
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/679-8656 (fax)
cayers@seegerweiss.com

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
ANNY M. MARTIN
225 N.E. Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
amartin@rgrdlaw.com

Attorneys for Plaintiffs

[Additional counsel listed in signature block.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

## (NEWARK DIVISION)

| | |
|---|---|
| KELLY PALAZZI and CINDY JENKINS, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Civil Action No. _____ |
| Plaintiffs, ) ) | **CLASS ACTION COMPLAINT** |
| vs. ) ) | JURY TRIAL DEMANDED |
| NATIONAL COURT REPORTERS ASSOCIATION, ) ) ) | |
| Defendant. ) ) | |

Plaintiffs Kelly Palazzi and Cindy Jenkins (together, "Plaintiffs"), individually and on behalf of all others similarly situated (the "Class") as defined herein, bring this antitrust action to obtain injunctive and monetary relief against Defendant National Court Reporters Association ("Defendant" or "NCRA") for its anticompetitive conduct as it relates to a tying arrangement in direct violation of Section 1 of the Sherman Act, 15 U.S.C. §1. In support of the foregoing, Plaintiffs allege the following based on personal knowledge as to themselves and upon information and belief as to all other matters based on the investigation of counsel.

## INTRODUCTION

1.      For over a decade, NCRA has abused and continues to abuse its powerful position within the stenographic community to collect membership dues through anticompetitive means. In addition to completing a court reporting program, at a vocational school or community college, court reporters and simultaneous captioners (together, "Stenographers") are required by certain states and courts to have certification ("Stenographic Certification") to prove they are adequately educated and trained to complete stenographic work. In fact, many states and courts expressly require NCRA-specific certification.

2.      To maintain NCRA certification, Stenographers who are NCRA certified ("certified court reporters" or "CCRs") are required to complete a continuing education obligation which requires NCRA CCRs to earn a minimum of 3.0 continuing education units ("CEUs"), purchased from NCRA-sponsored or

approved providers, over each three-year period to maintain NCRA certification.[1] Attendant thereto, NCRA certified CCRs are also required to pay submission fees to register their CEUs.

3.      Separately, and in addition to those certification-related requirements, NCRA, as a trade association, exploits the position it has, arising from state and court CCR certification requirements, by forcing Stenographers to also become paying members of NCRA and maintain that paid membership (regardless that they are certified and current on all CEU obligations) or lose their certification.[2]

4.      Obtaining a membership from any other stenographic trade association other than NCRA does not substitute for NCRA membership in this regard. To maintain NCRA certification, NCRA requires membership in its own organization. Given state, court, and employer certification requirements, CCRs have no real choice when it comes to purchasing CCR trade association membership since they must purchase NCRA membership to maintain their NCRA certification.

5.      In addition to the monopoly NCRA holds in the Stenographic Certification market, NCRA also maintains a monopoly in the market for membership in professional reporting or captioning associations ("Stenographic Membership Market"). As discussed herein, by requiring the purchase of NCRA

---

[1]    *Registered Skilled Reporter (RSR)*, NCRA, https://www.ncra.org/certification/NCRA-Certifications/registered-skilled-reporter-(rsr) (last visited Dec. 2, 2024).

[2]    *Id.*

membership for the maintenance of NCRA certification, NCRA ties its membership to its certification. Since NCRA certification is a requirement for maintaining stenographic work and employment, and because failure to join NCRA results in the loss of NCRA certification, any meaningful competition in the Stenographic Membership Market is foreclosed.

6.      State, court, and employer requirements have transformed certification into a fundamental necessity, as Stenographers cannot expect to obtain or maintain steady employment without being NCRA certified. Failure to have NCRA certification can have crippling effects on a Stenographer's income, career, and ability to work. The problem is even more acute for Stenographers who wish to work across state lines or remotely.

7.      Through its dominance of the Stenographic Membership Market, NCRA exploits its position to charge CCRs inflated membership dues and engage in other greedy and anticompetitive activities. Plaintiffs, NCRA CCRs, Stenographers, competitor stenographic certification providers, and other stenographic trade associations have been injured.

8.      NCRA's membership alone accounts for close to 60 percent of Stenographers nationwide. This percentage grows dramatically in the context of NCRA membership in these specific jurisdictions and states where stenographic certification is required.

9.    To obtain and maintain their certifications, Plaintiffs and other NCRA CCRs have paid millions of dollars in registration, examination, and certification fees to NCRA. To comply with NCRA certification's continuing education requirement, Plaintiffs and other NCRA CCRs have also expended additional monies for CEU courses, conferences, and events. Further still, Plaintiffs and other NCRA CCRs are forced to pay a separate annual membership fee to NCRA or lose their status as "certified" Stenographers.

10.    NCRA's CEU requirement is the only requirement that is directly related to ensuring the competency of Stenographers, by providing certification holders with the knowledge necessary to maintain and update their skills and enabling them to compete in a fast-paced world of ever-changing technology.

11.    NCRA membership is a separate service from NCRA certification and the continuing education requirement that accompanies it. NCRA membership, as opposed to any other CCR trade association membership, does nothing to uniquely benefit or assist CCRs in the performance of their work.

12.    Despite already being certified and meeting the requirements to be recognized as CCRs, including completing CEUs – and having already paid the fees associated with such certification and CEUs – NCRA requires Plaintiffs and its other certified CCR members separately to maintain their NCRA memberships in good standing, *i.e.*, also pay annual membership fees to NCRA or lose their NCRA certifications.

13.    Annual dues for participating NCRA members are currently set at $300.[3] In 2022, NCRA reported having collected over $2.8 million dollars from annual membership dues[4] being unlawfully forced upon Plaintiffs and other NCRA CCRs bound to pay annual membership fees for fear of losing their certification.

14.    Defendant's practice of forcing CCRs to purchase and pay for annual membership to NCRA constitutes an illegal tying arrangement in violation of Section 1 of the Sherman Act, that has caused and will continue to cause damage to Plaintiffs and the Class as defined herein.

15.    Other professional court reporting and captioning organizations compete with NCRA to offer and sell paid trade association memberships to CCRs. However, Defendant's unlawful tying arrangement has deterred and reduced the number of CCRs who are willing to purchase memberships in other stenographic organizations and, thus precluded competition from developing in a relevant antitrust market, namely, the Stenographic Membership Market.

16.    Given its control over the market, most Stenographers seeking certification purchase and obtain their certification through NCRA. This has created barriers to entry and prevented potentially viable competitors from entering the

---

[3]    *Membership Types*, NCRA, https://www.ncra.org/home/about-ncra/ membership/membership-types (last visited Dec. 2, 2024).

[4]    *See* National Court Reporters Assn, Form 990 - Return of Organization Exempt From Income Tax, PROPUBLICA (2022), https://projects.propublica.org/nonprofits/ organizations/362213239/202313069349301966/full (last visited Dec. 2, 2024).

Stenographic Membership Market. Furthermore, NCRA's unlawful tying arrangement has increased the costs faced by its current rivals and softened price competition between NCRA and potential competitors.

17.     NCRA has been able to charge a much higher membership fee than its competitors in the Stenographic Membership Market by using its unlawful tying arrangement to minimize any threats from potential competitors.

18.     Due to NCRA's anticompetitive tying arrangement, all CCRs who have purchased NCRA memberships have paid inflated prices for their annual memberships.

19.     There is no evidence that NCRA's tying arrangement does anything to enhance or improve the services and products offered by NCRA; in other words, NCRA's unlawful tying arrangement does nothing to benefit its members' certification as Stenographers.

20.     Moreover, CCRs who retire, after receiving and maintaining their certification through their working years, are still required to pay annual dues as retired CCRs ("Retired CCRs") to continue to represent themselves as having ***been*** certified. While retired membership fees are lower than participating membership fees, their continued collection does not benefit Retired CCRs who want to maintain their certification.

21. Accordingly, Plaintiffs, individually and on behalf of a Class of those similarly situated, now seek damages, injunctive relief, and all other appropriate relief for NCRA's wrongdoing.

## PARTIES

22. Plaintiff Kelly Palazzi is an adult resident and citizen of the state of New Jersey residing in South Hackensack, New Jersey. Ms. Palazzi has been a CCR in good standing for over 25 years and has been forced to purchase an NCRA membership to maintain her certification. Ms. Palazzi is an RPR in good standing who has been an NCRA member since 1999.

23. Plaintiff Cindy Jenkins is an adult resident and citizen of the state of Illinois residing in Pekin, Illinois. Ms. Jenkins was a CCR in good standing for over 30 years and was forced to purchase NCRA membership to maintain her certification. Ms. Jenkins was an NCRA Certified Realtime Captioner ("CRC"), Registered Professional Reporter ("RPR"), and Certified Realtime Reporter ("CRR") in good standing who was an NCRA member from 1993 until September 2024.

24. NCRA is a professional organization incorporated under the laws of the Commonwealth of Virginia. Its headquarters are at 12355 Sunrise Valley Drive, Suite 610, Reston, Virginia 20191.

## JURISDICTION AND VENUE

25.    The claims outlined in this Complaint arise under Section 1 of the Sherman Act, 15 U.S.C. §1, and seek injunctive relief and damages under Sections 4 and 16 of the Clayton Antitrust Act of 1914, 15 U.S.C. §§15 and 26, for the injuries that Plaintiffs and all others similarly situated have sustained and continue to sustain due to NCRA's unlawful tying arrangement.

26.    The Court has subject matter jurisdiction over the federal antitrust claims under 28 U.S.C. §§1331 and 1337, and the Court has supplemental jurisdiction over the state antitrust and consumer fraud claims under 28 U.S.C. §1367.

27.    Venue is proper in this judicial district under 15 U.S.C. §22 and 28 U.S.C. §1391 because NCRA transacts business within this District, offers certifications and memberships to Stenographers in this District, and a substantial part of the events giving rise to the claims arose within the bounds of this judicial district.

## FACTUAL ALLEGATIONS

### The Work of Stenographers

28.    In the United States, Stenographers play an integral role in our society by creating written records of spoken word. Whether in the legal system, real-time captioning or broadcasting, stenographic work is a public service that benefits communities at local and national levels.

29.    Court reporters play a vital role in our legal system by completing reliable and accurate transcripts of legal proceedings. These transcripts preserve the integrity of the legal record, support the judicial process, and make the courts accessible to deaf and hard-of-hearing individuals who rely on written transcriptions.

30.    Similarly, captioners provide written transcriptions of broadcasting and public service announcements that create written records while also enabling deaf and hard of hearing individuals to participate in conferences, phone calls, classes, audience-style events and, importantly, become aware of live broadcast announcements regarding natural disasters and relief efforts.

31.    Given the importance of Stenographers' work, states, courts, and certain employers require that Stenographers be certified to prove that they meet professional standards and have obtained the requisite skill set to carry out their work.

**State and Court Requirements for Stenographers**

32.    In the United States, professional licenses are typically issued by state governments and agencies that will allow an individual to practice their profession by validating their competence and adherence to that state's professional standards. Certifications may be issued by private organizations, but like licenses, require that the individual being certified meet certain education, training, or competency requirements to be certified in a certain profession or field.

33. Certifications for Stenographers can be required or voluntary, depending on the policies of the states or courts to which the Stenographer is providing his/her services.

34. The chart below indicates which states and territories require Stenographers to hold licenses and certifications to work as a Stenographer in that state.

| States Requiring Stenographic Certification or Licenses | | | | | |
|---|---|---|---|---|---|
| State | State Req. Certification? | Court Req. Certification? | NCRA Accepted? | NVRA Accepted? | Other Certification Accepted? |
| 1. Alabama | License | Yes | Yes | Yes | No |
| 2. Alaska | No | Yes | Yes | No | AAERT |
| 3. Arizona | License | Yes | Yes | Yes | No |
| 4. Arkansas | License | Yes | Yes | Yes | No |
| 5. California | License | Yes | No | No | State |
| 6. Colorado | No | Yes | Yes | No | No |
| 7. Delaware | Yes | Yes | Yes | No | No |
| 8. Georgia | License | Yes | Yes | Yes | AAERT |
| 9. Hawaii | Yes | Yes | Yes | No | No |
| 10 Idaho | License | Yes | Yes | No | No |
| 11 Illinois | Yes | Yes | Yes | No | No |
| 12 Indiana | No | Yes | Yes | No | No |
| 13 Iowa | Yes | Yes | Yes | Yes | State |
| 14 Kansas | License | Yes | Yes | Yes (Voice Reporter Only) | State |
| 15 Louisiana | License | Yes | Yes | Yes | State and AAERT |
| 16 Maryland | No | Yes | Yes | Yes | No |
| 17 Massachusetts | No | Yes | Yes | Yes | Yes |
| 18 Michigan | License | License | Yes | No | No |
| 19 Mississippi | License | Yes | Yes | Yes | State or other State |
| 20 Missouri | No | Yes | Yes | Yes | No |
| 21 Nebraska | No | Yes | Yes | No | AAERT |
| 22 Nevada | License | Yes | Yes | Yes | Other State |
| 23 New Hampshire | License | Yes | Yes | Yes | No |
| 24 New Jersey | License | Yes | Yes | No | No |
| 25 New Mexico | License | Yes | Yes | No | No |
| 26 North Carolina | No | Yes | Yes | Yes | Yes |
| 27 Ohio | No | No | Yes | No | No |

| 28 | Oklahoma | License | Yes | Yes | Yes | Yes |
| 29 | Oregon | Yes | Yes | Yes | Yes | No |
| 30 | Pennsylvania | Yes | No | Yes | No | No |
| 31 | Tennessee | License | Yes | Yes | Yes | AAERT |
| 32 | Texas | Yes | Yes | No | No | State Only |
| 33 | Utah | License | Yes | Yes | Yes | No |
| 34 | Vermont | No | Yes | Yes | No | No |
| 35 | Virginia | No | Yes | Yes | Yes | No |
| 36 | Washington | License | Yes | Yes | Yes | State |
| 37 | West Virginia | No | Yes | Yes | Yes | Yes |
| 38 | Wisconsin | No | Yes | Yes | Yes | No |
| 39 | Wyoming | Yes | Yes | Yes | No | No |
| 40 | Guam | Yes | Yes | Yes | No | State |
| 41 | Puerto Rico | Yes | Yes | Yes | No | No |
| 42 | Virgin Islands | Yes | Yes | Yes | No | No |

35.    Currently, 39 states either require or have courts that require Stenographers to be licensed or certified or to work as stenographers. Courts in the U.S. territories of Guam, Puerto Rico, and the Virgin Islands also require certification.

36.    Of these 39 states, only California and Texas state courts require that their Stenographers sit for an exam that is ***not*** administered by NCRA.  California and Texas administer their own state licensing exams for certification, which are

from the Supreme Court of California[5] and the Supreme Court of Texas,[6] respectively. The other 37 states all accept NCRA certification as a way to satisfy that states' or state courts' requirement or as way to waive out of completing that states' licensing exam. In other words, 95% of states requiring licensing or certification either require or accept NCRA certification.

37.    Given NCRA's wide acceptance by state licensing boards and courts, NCRA enjoys dominance in the Stenographer Certification Market. This dominance further encourages Stenographers to seek NCRA certification that will enable them to satisfy the requirement of 37 states with a single certification and, therefore, also be able to serve as Stenographer for courts and states outside of their primary residence.

---

[5]    Cal. Gov't Code §69942 (West 2003). ("No person shall be appointed to the position of official reporter of any court unless the person has first obtained a license to practice as a certified shorthand reporter from the Court Reporters Board of California"). *See also* Cal. Bus. & Prof. Code §8020 (West 2003) ("No person shall be admitted to the examination without first presenting satisfactory evidence to the board that the applicant has obtained one of the following. . . (c) A certificate from the National Court Reporters Association or the National Verbatim Reporters Association demonstrating proficiency in machine shorthand reporting or voice writing.").

[6]    *Court Reporters Certification*, TEX. JUD. BRANCH, https://www.txcourts.gov/jbcc/court-reporters-certification/initial-certification/#CSRreqs (last visited Dec. 2, 2024) ("A person may not engage in shorthand reporting in this State or be appointed an official court reporter or deputy court reporter unless that person is certified as a shorthand reporter by the Supreme Court of Texas.").

38.    No other certification besides NCRA's offers Stenographers the ability to expand their work across as many state lines. This is particularly important in today's digital age, where a Stenographer has the ability to virtually work across state lines.

39.    The grasp of NCRA in the Stenographic Certification Market is such that some states' codes and laws are written to expressly require that NCRA certification be obtained prior to applying for state licensing.

| State | Statute / Rule | Statutory / Rule Language |
|---|---|---|
| Colorado | Colorado Chief Justice Directive 5-03, II | "All official court reporters hired shall be RPR[1] certified . . . . If the judicial district hires a non-certified reporter, that reporter must become RPR certified within two years of hire. Non-certified reporters may be used on a case-by-case basis if certified reporters are not available." |
| Delaware | Del. Admin. Dir. No. 132(G)( Nov. 1, 2002) | "The program shall provide for the certification of court reporters who receive and maintain a **Registered Professional Reporter ("RPR") certification**, as granted by the **National Court Reporters Association**, or the equivalent thereof" |
| Hawaii | Rules Governing Court Reporting in the State Of Hawai'i, Rule 9.1 (Feb. 28, 1984) | "an applicant must meet the following minimum qualifications: . . . (2) Demonstrate reasonable proficiency in making verbatim records . . . the applicant's demonstration of reasonable proficiency shall be determined by (i) the applicant's ability to pass an examination for certification given by the board; and (ii) proof the reporter earned the designation '**Registered Professional Reporter (RPR)**' from the **National Court Reporters Association.**" |
| Idaho | Id. Code 54-3108(1) | "1) Applicants for certification must take and pass the Idaho certified shorthand reporter examination. Alternatively, applicants . . . must provide proof, . . . of having passed one (1) of the following examinations ... (a) The **registered professional reporter (RPR)** examination; (b) The **registered merit reporter (RMR)** examination; (c) The **registered diplomate reporter (RDR)** examination; (d) The **certified realtime reporter (CRR)** examination; or (e) The **certified realtime captioner (CRC)** examination."[2] |
| Illinois | Ill. Admin. Code tit. 68, § 1200.30(e) | "An applicant for licensure who possesses an active Registered Professional Reporter certificate by examination or a Registered Merit Reporter certificate issued by the **National Court Reporters Association** shall not be required to sit for the examination." |
| New Jersey | N.J.Admin. Code §13:43-2.2(b)(3) | "In addition to (a) above, the applicant must present proof of one of the following: 1) A certificate of completion from a reporting school program; 2) Proof of an active certificate or license from another state; or 3) A certification issued by the **National Court Reporters Association**" |
| New Mexico | N.M. R. Rcdg. Jud. Proc. 22-501 | "B. **Examinations**. . . . . The board may use entry level tests conducted by the **National Court Reporters Association**, and candidates must pass all three skills parts of the examination as well as the written examination." |
| Pennsylvania | 201 Pa. Code §4004(D)(1) | "All persons employed or utilized by a court as a court reporter or court recorder, . . . . , shall be requalified as meeting the above criteria at least every three (3) years. . . . upon completion of thirty (30) hours of continuing professional education which has been properly accredited or certified by the **National Court Reporters Association**." |
| Wyoming | Wyoming U.R.D.C. Rule 908 (II)(a)(1)-(3) | "(a) All persons performing the duties of Official Court Reporter shall be certified. The reporter may obtain Wyoming certification by: (1) Passing the Registered Professional Reporter examination administered by the **National Court Reporters Association**." |

[1] Please note that RPR certification is only available from the National Court Reporters Association.
[2] RMR, RDR, CRR and CRC are all certification designations that are only awarded by the National Court Reporters

40.    In fact, twelve[7] of the 39 states requiring certification will only accept NCRA certification, to the exclusion of any other privately issued certifications. NCRA capitalizes on these exclusions to retain its dominance over the Stenographic Certification Market and extract annual membership dues from members.

41.    NCRA certification is not only accepted by most states, but it is accepted by states having high numbers of court reporters further demonstrating NCRA's control over the Stenographic Certification Market.

**National Court Reporters Association**

42.    According to NCRA's website, NCRA is a professional organization for those that "capture and convert the spoken word to text"[8] (*i.e.*, Stenographers). NCRA also claims it provides its more than 12,000 members with "educational opportunities and industry-recognized court reporting, educator, and videographer certification programs."[9]

43.    Like other professional trade associations, such as the American Bar Association for attorneys, NCRA claims to provide its members with network expansion, more information about the industry, opportunities for leadership

---

[7]    Twelve states include: Colorado, Delaware, Hawaii, Idaho, Illinois, Michigan, New Jersey, New Mexico, Ohio, Pennsylvania, Vermont, and Wyoming.

[8]    *About NCRA*, NCRA, https://www.ncra.org/home/about-ncra (last visited Dec. 2, 2024).

[9]    *See id.*

involvement, and access to educational online webinars and e-seminars at member convenience.[10]

44.    The current rates for membership in NCRA are as follows:

| Membership Type | Annual Dues |
|---|---|
| **Participating Members**<br>*(available to stenographic court reporters and captioners)* | $300 for U.S.<br>$150 for International |
| **Student Members**<br>*(available to students currently enrolled in a formal stenographic court reporting, captioning, or scoping program)* | $55 |
| **Associate Members**<br>*(available to instructors, school officials, agency owners, scopists, vendors, attorneys, paralegals, legal video specialists, and others)* | $179 for U.S.<br>$145 for International |
| **Graduating First-Year Student Members**<br>*(For student members who wish to transition to first-year reporter membership status)* | $145 |
| **Retired Members**<br>*(For members retiring from the court reporting and captioning profession)* | $150 |
| **Inactive Membership**<br>*(Inactive membership can be taken up to 6 times in a member's lifetime)* | $150 |

45.    NCRA membership does not come with any unique benefits. Similar to other stenographic membership associations and organizations,[11] NCRA offers its members standard benefits, including continuing education programs, being listed

---

[10]  *Member Benefits*, NCRA, https://www.ncra.org/home/about-ncra/membership/Member-Benefits (last visited Dec. 2, 2024).

[11]  *See AAERT Member Savings and Solutions*, AM. ASS'N. ELEC. REPS. & TRANSCRIBERS, https://www.1800members.com/aaert (last visited Dec. 2, 2024).

on NCRA's online directory, PROLink, subscriptions to professional publications, networking opportunities and resources (which, per NCRA website, are often provided via the work of volunteers), volume discount arrangements on office supplies, various insurances, and legislative advocacy to create policy changes to benefit Stenographers.

46.    For instance, the National Verbatim Reporters Association ("NVRA") provides similar benefits to its members. According to the NVRA website, the NVRA offers "[c]ertification, [c]onferences, [and n]ewsletters"[12] and, like NCRA, "conducts certification testing for both voice and stenographic court reporting methods"[13] and provides continuing education courses.[14]

47.    Membership in state court reporter associations like the Certified Court Reporter's Association of New Jersey ("CCRA-NJ") or the Illinois Court Reporters Association ("ILCRA") also provide similar benefits to their members. The CCRA-NJ offers its members opportunities to benefit from continuing education programs, access to educational materials, networking events, legislative advocacy and

---

[12] *About NVRA*, NAT'L VERBATIM REPORTERS ASS'N, https://nvra.org/page/AboutNVRA (last visited Dec. 2, 2024).

[13] *Id.*

[14] *Pre-Approved CEs for NVRA Members*, NAT'L VERBATIM REPORTERS ASS'N, https://nvra.org/page/Pre-ApprovedCEsforNVRAMembers (last visited Dec. 2, 2024).

support, and other professional resources.[15] The ILCRA provides its members with opportunities to benefit from legislative advocacy, annual conferences, an online newsletter, reduced rates on conventions and seminars, continuing education courses, and an affiliated state unit within NCRA.[16]

48.     Conversely, annual membership dues in state court reporter associations are significantly less than NCRA annual dues for Stenographers. For example, annual dues for membership (participating or active) in the NVRA, CCRA-NJ, and ILCRA are $225, $150, and $150, respectively.

49.     However, unlike NCRA, state court reporter associations do not issue certifications. As alleged above, most states will only recognize NCRA certification, and require that Stenographers working in their state obtain and maintain NCRA certification throughout their careers.

50.     Should a Stenographer choose to join other court reporter associations or organizations, those memberships would be unrelated to continuing to hold their certifications and disassociation from such organizations would also not effect that Stenographer's certification status.

---

[15] *Become a Member*, CERTIFIED CT. REPORTER'S ASS'N OF N.J., https://ccranj.memberclicks.net/become-a-member (last visited Dec. 2, 2024).

[16] *Membership*, ILCRA, https://www.ilcra.org/membership (last visited Dec. 2, 2024).

51.    NCRA has established eight certification programs specifically designed to recognize competency and skill in certain areas of stenography. However, certain specialty certifications require that lower-tier certifications be obtained prior, despite lower-tier certifications being unrelated to the skill set needed for the desired specialty certification.

52.    The obligation to maintain NCRA membership coupled with the high costs required for maintaining their certification, prohibits Stenographers from joining other professional organizations and associations that offer similar benefits further strengthening NCRA's hold over the Stenographic Membership Market.

**NCRA's Control over Stenographic Certification and Education Programs**

53.    NCRA has established and controls an expansive accreditation system for stenographic certification programs that issue stenographic certifications to Stenographers who have separately completed court reporting school and certification programs.

54.    According to its website, NCRA "serves as an independent, third-party organization that reviews and approves court reporting programs, measuring them against established standards of educational excellence."[17] While NCRA is not an official accrediting agency, it hosts the Council on Approved Student Education

---

[17] *Court Reporting Program Approval*, NCRA, https://www.ncra.org/home/start-your-career/schools-and-program-information/court-reporting-program-approval (last visited Dec. 2, 2024).

("CASE"), which itself decided on the industry standard of "General Requirements and Minimum Standards" ("GRMS") that Court Reporting Programs must follow to obtain NCRA approval.[18]

55.    NCRA offers student memberships for those individuals "currently enrolled in a formal stenographic court reporting, captioning, or scoping program" at a lower membership rate.[19] However, once student members pass the certification exam, they are required to pay the full participating NCRA membership rate after just one year at an interim graduating student rate. Other than "[m]entors and resources that support the completion of school," student membership with NCRA does not differ from the benefits offered to any other members.[20]

56.    In 2022, 287 degrees in court reporting were awarded, and the number of degrees being awarded each year is on the decline, given a shortage of people choosing to become Stenographers.[21]

---

[18]    *Id.*

[19]    *Student Membership*, NCRA, https://www.ncra.org/home/start-your-career/Student-Membership (last visited Dec. 2, 2024).

[20]    *Id.*

[21]    *Court Reporting*, DATA USA, https://datausa.io/profile/cip/court-reporting (last visited Dec. 2, 2024).

57.    NCRA currently has 22 court-reporting schools on its list of NCRA-approved court-reporting programs.[22] These programs are located in 14 states and Canada.[23]

58.    For example, in Illinois, the ICRA's website lists only three court reporter training programs, all of which are NCRA approved. Two programs (Generations College and South Suburban College) are located in Illinois, while the third (College of Court Reporting) is in Indiana.[24]

59.    Illinois has state-mandated certification requirements and a Certified Shorthand Reporter ("CSR") Examination to ensure Stenographers are duly qualified. On the other hand, Illinois exempts applicants who possess an RPR or RMR from sitting for the state examination.[25]

60.    On its website, Generations College advertises that its faculty of "dedicated stenographer school instructors prepare students for the state Certified Shorthand Reporter (CSR) and the Registered Professional Reporter (RPR)

---

[22] *NCRA-Approved Court Reporting Programs*, NCRA, https://www.ncra.org/home/start-your-career/schools-and-program-information/ncra-approved-court-reporting-programs (last visited Dec. 2, 2024).

[23] *Id.*

[24] *Court Reporter Training Programs*, ILCRA, https://www.ilcra.org/court-reporter-training-programs (last visited Dec. 2, 2024).

[25] *Shorthand Reporting*, ILL. DEPT. OF FIN. & PROF. REG., https://idfpr.illinois.gov/profs/shorthandreporter.html (last visited Dec. 2, 2024).

certification exams."[26] It further boasts of its relationship with NCRA by claiming that its "curriculum is also designed to prepare graduates to pass the Illinois Certified Shorthand Reporter (CSR) and the national [RPR] exams."[27]

61.    For example, in New Jersey, the CCRA-NJ website directs its visitors to NCRA for a list of approved schools and programs. While CCRA-NJ does not endorse or recommend a specific school or program, it only lists NCRA as a source to locate a court-reporting school or program.[28]

62.    Additionally, New Jersey requires NCRA's RPR certification to obtain the required New Jersey Certified Court Reporter License.[29]

**NCRA's Market Power over Stenographic Certification**

63.    As detailed above, most states and courts require that Stenographers be certified to obtain and maintain their employment. Courts also offer salary incentives for certified Stenographers.

---

[26] *Court Reporting Degree Program Chicago*, GENERATIONS COLLEGE, https://www.generations.edu/academics/associates-degree-programs/court-reporting-major/ (last visited Dec. 2, 2024).

[27] *Id.*

[28] *CCRA-NJ Frequently Asked Questions*, CERTIFIED CT. REPORTERS ASS'N OF N.J., https://ccranj.memberclicks.net/frequently-asked-questions#:~:text=In%20order%20to%20become%20a,njconsumeraffairs.gov%20for%20more%20information (last visited Dec. 2, 2024).

[29] *Id.*

64.    The antitrust product market relevant to Plaintiffs' claims is the Stenographic Certification Market which is comprised of the states, territories, and courts which require Stenographers to be certified to work. Within the Stenographic Certification Market there are no reasonable substitutes for NCRA certification and, thus, NCRA faces no meaningful competition.

65.    Certification or obtaining the RPR designation is a way for Stenographers to demonstrate mastery of basic knowledge and skills in a particular specialty.

66.    To obtain the RPR certification, Stenographers satisfy specific criteria and successfully pass a series of examinations that prove the mastery of their skills in professional court reporting.

67.    NCRA certification is essential to Stenographers' development and maintenance of their work. Without certifications, Stenographers are denied work opportunities and are often found ineligible for employment by the courts.

68.    Employers and courts commonly use and rely on NCRA certification to identify and select the most competent and highly skilled Stenographers.

69.    Once a Stenographer goes through the time-intensive and costly process of obtaining certification, it is essential that he or she remain certified as they progress throughout their career.

70.     On top of paying for NCRA membership in order to maintain their NCRA certification, NCRA CCRs are also required to satisfy certain continuing education requirements, which cost even more money.

71.     Specifically, all NCRA CCRs are required to complete 3.0 CEU credits (equivalent to about 30 real-time hours) of continuing education over a three-year period. These CEU courses are required to satisfy NCRA's continuing education requirement.

72.     Failure to satisfy the continuing education requirements can result in the loss of NCRA membership and certification.

73.     NCRA continuing education courses cost around $55 for 0.1 CEUs, meaning that one CEU costs about $550. As NCRA CCRs are required to obtain 3.0 CEUs for a three-year period, the financial cost of obtaining 3.0 CEUs amounts to about $1,650 for every three-year period, an average yearly cost of $550. This average yearly cost of $550 for CEU credits is in addition to NCRA annual membership dues.[30]

74.     In addition to paying for CEU courses, conferences, and events NCRA forces its CCRs to pay annual membership dues to maintain their NCRA certification.

---

[30] *See Live Webinars*, NCRA, https://learningcenter.ncra.org/live-webinars (last visited Dec. 2, 2024).

75.     Despite NCRA's claims that NCRA membership is not necessary to *sit for* certification exams, CCRs are ultimately required to become participating members of NCRA *within 30 days of passing* the respective certification exam.[31]

76.     Failure to become a participating member of NCRA following the certification exam effectively voids a CCR's certification rendering the certification process useless.

77.     Because certification is a common requisite among stenographic employers, losing certification inhibits Stenographers from finding work or continuing to work in their positions, having a devastating effect on a Stenographer's livelihood.

78.     NCRA knows that its certification is of vital importance to both Stenographers and NCRA itself.

79.     To that end, NCRA employs a State Government Relations Manager to focus on advocating for NCRA and its interests to state legislatures.[32] As NCRA advertises, part of its membership benefits include legislative advocacy, which helps NCRA retain its prominence in state licensing requirements and in turn, its prominence in the Stenographic Certification Market.

---

[31]  *Registered Skilled Reporter* (RSR), *supra* note 1.

[32]  *Meet the Team*, NCRA, https://www.ncra.org/home/about-ncra/ncra-staff (last visited Dec. 2, 2024).

80.    Along with the State Government Relations Manager, NCRA hosts two committees which focus on government relations and supporting affiliated state associations on "matters of current relevance to NCRA, affiliates, and the profession."[33]

81.    To further promote its certification, NCRA celebrates certification month in May and hosts an annual campaign to promote NCRA certification and "encourage those who haven't considered earning one of NCRA's nationally recognized certifications to rethink their decisions."[34]

82.    By promoting additional certifications to NCRA members, NCRA not only manages to collect additional fees in the completion of additional certification programs but also strengthen its hold over CCRs.

83.    CCRs with multiple NCRA certifications are further disincentivized from leaving NCRA and seeking membership among other organizations as they have more to lose from leaving NCRA.

84.    NCRA charges examination, processing, and administrative fees to Stenographers who apply for certification. The fees are charged on a per-test basis and pricing can differ based on membership levels or status. While it is not necessary

---

[33] *NCRA Committees & Councils*, NCRA, https://www.ncra.org/home/get-involved/Volunteer/NCRA-Committees-Councils (last visited Dec. 2, 2024).

[34] *Celebrate Certification Month*, NCRA, https://www.ncra.org/home/events-news/celebrate-certification-month (last visited Dec. 2, 2024).

to be an NCRA member to take a certification test, discounts are provided to NCRA student and reporter members over non-members. Notwithstanding the discounted rates, NCRA's requirement that certified Stenographers maintain an NCRA membership to use their certification designation inevitably forces Stenographers to purchase and ultimately repurchase an NCRA membership. In effect, the non-discounted rates for certification examinations serve as penalties for Stenographers who delay obtaining NCRA membership, which they will inevitably be required to maintain to use their certification designation(s).

85.     In sum, CCRs that seek to obtain and maintain their certifications must pay for certification examination fees **and** an annual NCRA membership fee. Should a CCR allow their certification to lapse ("Decertified CCRs"), they can opt to reinstate their certification status so long as they satisfy NCRA's requirements for reinstatement.

86.     Failure to maintain a current NCRA membership ultimately results in additional fees, which operate as penalties for CCRs that allow their memberships to lapse. NCRA's charge of a reinstatement fee in addition to payment of annual dues for a year in which the Decertified CCR will not be permitted to use their CCR

designation amounts to between \$410 and \$550[35] in penalties in addition to **one year** without certification.

87.    Because certification is vital to obtaining work as a Stenographer, NCRA's austere reinstatement policies prohibit Decertified CCRs from working for one year while they wait for their membership to be reinstated.

88.    As certification requires completion of programs and a series of different tests that NCRA itself creates, Decertified CCRs are not able to reinstate certifications with other court reporting associations and are forced to return to the stenographic association that issued their original certification.

89.    For example, a Decertified CCR could not reinstate their RPR with the NVRA as the NVRA does not issue the RPR. If the Decertified CCR decided they wanted to continue with NVRA membership instead of NCRA membership they would have to complete the NVRA's certification program and successfully pass the NVRA exam to be designated as a Realtime Verbatim Reporter (RVR), the NVRA equivalent to NCRA RPR designation. Moreover, this is only a viable option if the Decertified CCR works in or is completing work for a state that accepts NVRA certification, which is a limited case.

---

[35]  This is the price of a participating member's annual dues (\$300) and the \$110 or \$250 reinstatement fee.

90.    Notably, the decision to pursue an alternative certification with a competing stenographic association would require the Decertified CCR to effectively surrender the certification they had already obtained and to start a second certification from scratch.

91.    Given the time and financial cost of completing stenographic certification programs, completing a second certification program from the beginning is not a viable or reasonable alternative for CCRs who have already completed an NCRA certification and wish to work with certification.

92.    As mentioned above, the NVRA offers its own "certification" programs for Stenographers.

93.    However, NVRA certification is recognized in a limited number of states, meaning a Stenographer in a state where NVRA is not recognized cannot work as a CCR. NVRA is not as widely recognized by employers and courts as NCRA certification.

94.    Thus, for CCRs who have completed an NCRA certification program, NVRA certification is not interchangeable with NCRA certification.

95.    Consequently, NCRA has dominant market power in the Stenographic Certification Market.

**NCRA's Unlawful Tying Arrangement**

96.    Knowing that CCRs who have obtained NCRA certification need to maintain their certification and have no alternative to NCRA certification, NCRA

has leveraged its market power in the Stenographic Certification Market by conditioning the maintenance of NCRA certification (the "tying product") on separately purchased membership in NCRA (the "tied product"). As a result, NCRA has been able to inflate the price it charges for membership in NCRA and has thereby earned inflated revenues from membership dues that NCRA would not otherwise have earned.

97.    Since at least March 2014, NCRA has required all NCRA-certified Stenographers to purchase and maintain annual membership in NCRA and pay NCRA's annual membership dues to avoid deactivation of their NCRA certification(s).

98.    That requirement is now reflected in NCRA's Certification Reinstatement Policies, which became effective in March 2014.[36] According to NCRA, it has provided these rules and policies to govern its various certification programs "to ensure the competency of court reporters, captioners, and videographers, and a continuing education program to equip credential holders with the knowledge and skills necessary to compete in a world of ever-changing information and technology."[37]

---

[36] *Certification Reinstatement Policies*, NCRA, https://www.ncra.org/certification/ncra-reinstatement-policies/Certification-Reinstatement-Policies (last visited Dec. 2, 2024).

[37] *NCRA Certification Policies*, NCRA, https://www.ncra.org/certification/ncra-reinstatement-policies (last visited Dec. 2, 2024).

99.    Depending on how long the certification has been lapsed, reinstatement is available in three tiers.[38]

100.  Tier I reinstatement is available to Decertified CCRs whose certifications have lapsed within the last three years. Tier I reinstatement requires that the Decertified CCR: a) pay the current year's dues; b) pay a reinstatement fee of $110; c) earn 1.0 CEU within the one year of paying the above-mentioned fees during which time the certification will not be current and may not be used; d) continue to maintain NCRA membership to maintain certification.[39]

101.  Tier II reinstatement is available to Decertified CCRs whose certifications have lapsed within the last three to seven years. Tier II reinstatement requires that the Decertified CCR: a) pay the current year's dues; b) pay a reinstatement fee of $110; c) earn 2.0 – 2.5 CEUs[40] within the one year of paying the above-mentioned fees during which time the certification will not be current and may not be used; d) continue to maintain NCRA membership to maintain certification.[41]

---

[38]  *Certification Reinstatement Policies*, *supra* note 35.

[39]  *Id*.

[40]  Whether 2.0 or 2.5 CEUs are required to be completed will depend on the number of certificates the Decertified CCR is seeking to reinstate.

[41]  *Certification Reinstatement Policies*, *supra* note 35.

102.   Tier III reinstatement is available to Decertified CCRs whose certifications have lapsed within the last seven years or more. Tier III reinstatement requires that the Decertified CCR: a) pay the current year's dues; b) pay a reinstatement fee of $250; c) have one year to take and pass the skills portion (RMR & CRR) or written knowledge test (Registered Diplomat Reporter ("RDR")) of the highest level of certification the individual wishes to reinstate; d) earn 1.0 CEU within the one year of paying the above-mentioned fees during which time the certification will not be current and may not be used; e) continue to maintain NCRA membership to maintain certification.[42]

103.   NCRA's reinstatement requirements box its members into paying for and maintaining their memberships within NCRA to the exclusion of other potentially competitive membership associations for the duration of their careers.

104.   That NCRA certified Stenographers have no choice but to buy and pay NCRA's annual membership dues to remain NCRA certified is evidenced in NCRA's Constitution and Bylaws, which provides under Section 9 — Privileges that "**Only** Members in good standing holding NCRA certifications, who maintain their certifications as required by the Board of Directors, may use NCRA certification designations associated with his/her certifications. The only exception

---

[42] *Id.*

is nonmember Certified Legal Video Specialists who have maintained his/her certification as defined by the Board of Directors."[43]

105.   Article III – Membership, Section 12 – Suspension for Nonpayment of Dues or Charges of NCRA's Constitution and Bylaws further explains that

> [t]he Membership of any person whose dues are sixty (60) days past due, or who is ninety (90) days or more in arrears in the payment of charges for Association programs, services, or materials, shall be suspended and all **_privileges_**[44] of Membership shall be terminated. Any Member suspended for nonpayment of dues or charges may be reinstated at any time prior to the close of that Membership year upon payment of the full current year's dues and any delinquent charges.[45]

106.   In fact, Section 13 of Article III of NCRA's Constitution and Bylaws reiterates that "The Membership of those Members who are under suspension for nonpayment of dues or other Association charges for programs, services, or materials at the close of a Membership year shall be terminated automatically."[46]

107.   What's more, NCRA sends correspondence to all NCRA CCRs who do not purchase their annual NCRA membership, uniformly informing them that their

---

[43]   _Constitution and Bylaws_, NCRA, https://www.ncra.org/home/about-ncra/leadership-and-governance/Constitution-and-Bylaws#article%203 (last visited Dec. 2, 2024).

[44]   Including the privilege of designating oneself as an NCRA CCR.

[45]   _Constitution and Bylaws_, _supra_ note 43.

[46]   _Id._

certification will be suspended and potentially deactivated as a result of the failure to renew and pay for NCRA annual membership.

108.   Being an NCRA member in good standing is a requirement of NCRA certification under NCRA's Constitution and Bylaws. To ensure that NCRA certification is not affected, NCRA members must remit full payment of NCRA membership dues and any delinquent charges before the close of the membership year.[47]

109.   There is no legitimate justification for NCRA's requirement that NCRA CCRs purchase membership in NCRA annually to maintain their certification designations.

110.   The costs of annual membership dues Plaintiffs and other CCRs incurred to maintain their NCRA certifications are in addition to the examination, processing, and administrative fees that each CCR already pays to NCRA as part of the initial NCRA certification process.

111.   The costs of NCRA membership are also in addition to the fees that each NCRA CCR already pays to NCRA to complete and submit their CEUs to maintain their certification.

112.   NCRA's requirement that CCRs purchase NCRA membership annually and pay the corresponding annual membership dues – beyond certification and

---

[47]   *See id.*

maintenance of certification (CEU) fees – has no bearing on, and has no relationship to, a Stenographer's competency to serve as a court reporter, captioner, or scopist.

113.   NCRA's membership fee requirement has no legitimate purpose and does nothing but produce additional revenue for NCRA. In 2020, NCRA was reported to have net assets in excess of $6 million while its "competitors" American Association of Electronic Reporters and Transcribers ("AAERT") and the NVRA each reported about $217,000.00 and $122,000.00, respectively.[48] The disparity between NCRA and its competitors makes it clear that NCRA dominates the Stenographic Membership Market.

114.   Without any real competition in the market, NCRA's conduct only serves to inflate prices in the Stenographic Membership Market, thereby necessarily reducing consumer welfare.

115.   Under NCRA's unlawful tying arrangement, NCRA CCRs are forced to pay what amounts to gratuitous annual membership dues that do nothing to benefit their stenographic work.

---

[48]   Christopher Day, *NCRA Net Assets Dwarf Competitors, Digital Court Reporting Bad for Business*, STENONYMOUS (Dec. 3, 2022), https://stenonymous.com/2022/12/03/ncra-net-assets-dwarf-competitors-digital-court-reporting-bad-for-business/.

**NCRA's Unlawful Tying Arrangement Has Inhibited Competition, Increased Prices, and Reduced Consumer Welfare in the Stenographic Membership Market**

116.    Unlike NCRA, other stenographic membership associations do not premise membership on obtaining certification. For example, membership in the stenographic association STAR[49] is not related to certification.[50]

117.    Instead, membership in organizations like STAR focuses on the networking, educational, and professional resources that they provide to their members, which are not bound to requirements and regulations involving certification.

118.    NCRA CCRs interested in joining another stenographic association are nonetheless required to continue to purchase NCRA membership and incur the additional costs to maintain their NCRA CCR designation ***and*** pay the dues of any such other associations. Consequently, many NCRA CCRs forego purchasing memberships in other professional stenographic associations due to these costs.

119.    By requiring membership as a condition for certification, NCRA has reduced the number of individuals considering purchasing membership in other

---

[49]    STAR, https://staronline.org (last visited Dec. 2, 2024) ("STAR is a membership organization for court reporting professionals and students utilizing all methods, agency owners and staff, as well as videographers, scopists, proofreaders, and editors.  We recognize and support all professional who provide communications access and create verbatim transcripts.").

[50]    *Membership*, STAR, https://staronline.org/membership/ (last visited Dec. 2, 2024).

professional stenographic associations. These requirements have created market-wide barriers to entry in the Stenographic Membership Market, as potential competitors of NCRA are dissuaded from entering the market since they cannot be guaranteed a market share sufficient to compete viably.

120.   NCRA's conduct has increased costs borne by any potential NCRA rivals who do not benefit from the economies of scale that larger competitors like NCRA enjoy.

121.   As a result of the tying arrangement, NCRA has been able to raise the price of membership above competitive levels and force all CCRs who join NCRA to pay annual membership fees that are significantly more than what other professional stenographic associations charge.

122.   NCRA's tying arrangement has reduced competition in the Stenographic Membership Market, as other rival associations have lost potential members, and the pricing and output of market participants do not reflect a competitive market.

123.   Irrespective of any superior membership benefits that may be provided by other stenographic organizations, the fact that membership in NCRA is required to maintain certification discourages innovation and competition among stenographic member associations and allows NCRA to maintain market prominence without having to strive to maximize membership benefits for its members.

124.   Because NCRA certification is vital to Stenographer employment, CCRs are forced to maintain a membership in NCRA despite any dissatisfaction they may have with the organization or the benefits or services NCRA provides its members.

125.   The diminished competition in the Stenographic Membership Market and NCRA's exercise of market power have harmed consumers and decreased consumer welfare. Indeed, by deterring entry and raising its rivals' costs, NCRA's actions have increased prices both in NCRA and throughout the Stenographic Membership Market. This increased pricing has reduced consumer welfare in a manner that the antitrust laws are intended to protect.

## CLASS ACTION ALLEGATIONS

126.   Plaintiffs bring this action on behalf of a Class  defined as follows:

All NCRA CCRs in the United States who work(ed) or provide(d) stenographic services in states or for courts which require certification and have purchased membership in NCRA.

127.   **Numerosity. Fed. R. Civ. P. 23(a)(1)**. The Class members are so numerous that joinder of all is impractical. Upon information and belief, the Class consists of thousands of CCRs who have purchased membership in NCRA since March 1, 2014, and the names and addresses of those CCRs are identifiable through documents maintained by NCRA.

128.   Indeed, upon information and belief, at least 8,000 members of the Class have held active NCRA certifications since March 2014.

129.  **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members of those classes. The common legal and factual questions include, among others:

(a)    whether the Stenographic Certification Market and the Stenographic Membership Market are separate product markets;

(b)    whether, during the relevant period, NCRA had market power in the Stenographic Certification Market;

(c)    whether, during the relevant period, NCRA exploited its market power in the Stenographic Certification Market by conditioning NCRA certification on the purchase of annual membership in NCRA.

(d)    whether NCRA's tying arrangement affected a substantial amount of interstate commerce;

(e)    whether NCRA's tying arrangement caused anticompetitive effects; and

(f)    whether there were any procompetitive justifications for NCRA's tying arrangement.

130.  **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs have the same claims for damages that they seek for absent class members.

131.  **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the Class. Their interests are aligned with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

132.  **Injunctive Relief Appropriate. Fed. R. Civ. P. 23(b)(2).** Defendant's unlawful conduct applies generally to the members of the Class, so that final injunctive relief is appropriate with respect to each such class.

133.  **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each Class member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by NCRA's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues

raised by NCRA's conduct. By contrast, the class action device will result in substantial benefits to the members of the Class and the court by allowing the court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

**CAUSES OF ACTION**

**COUNT I**

***PER SE* VIOLATION OF 15 U.S.C. §1**

134.   Plaintiffs repeat, reallege, and incorporate by reference all preceding allegations.

135.   Plaintiffs and the Class are CCRs who purchased membership in NCRA since March 1, 2014.

136.   The Stenographic Certification Market is separate from the Stenographic Membership Market.

137.   The Stenographic Certification Market arises from most states and courts requiring that Stenographers be certified in order to work as Stenographers in a state or to work as official court reporters within a court. To comply with these requirements individuals seek certification to practice their stenographic profession.

138.   On the other hand, membership in stenographic associations or organizations is more about the benefits that come with any professional association which seeks to offer professionals within the same field the opportunity to develop, foster connections, and enhance their business profile.

139.   The fact that most states and courts require Stenographers to hold valid certifications to practice their professions has reinforced NCRA's grip over the Stenographic Certification Market.

140.   At all times during the relevant period, NCRA has had market power in the Stenographic Certification Market, as there are no reasonable substitutes for NCRA certification available to CCRs who have completed NCRA certification programs.

141.   NCRA's requirement that CCRs maintain NCRA membership in good standing to maintain their certification forces Stenographers to comply with all of NCRA's requirements irrespective of whether these requirements actually relate to stenographic certification.

142.   Plaintiffs and NCRA CCRs have been forced to purchase annual membership in NCRA and incur NCRA's annual membership dues in order to continue to use their certifications and avoid having them invalidated and canceled.

143.   Because thousands of NCRA members have been forced to purchase annual NCRA membership to use and maintain their certifications, NCRA's tying arrangement has had a substantial effect on interstate commerce.

144.   NCRA's tying arrangement has foreclosed competition in the Stenographic Membership Market, resulting in market-wide pricing and product offerings that are not reflective of a competitive market.

145.   By conditioning NCRA certification on continuous membership in NCRA and the cost of NCRA's annual membership dues, NCRA has, therefore, established an unreasonable restraint of trade that constitutes a *per se* violation of 15 U.S.C. §1.

146.   As a result of NCRA's violation of 15 U.S.C. §1, Plaintiffs and the Class have paid NCRA supra-competitive prices for membership in NCRA, and, in addition to paying those inflated prices, NCRA members have also had to pay NCRA for continuing education credits to maintain their NCRA membership.

## COUNT II

## VIOLATION OF 15 U.S.C. §1 UNDER THE RULE OF REASON

147.   Plaintiffs repeat, reallege, and incorporate by reference the allegations in paragraphs 1 through 133 above.

148.   Plaintiffs and the Class are CCRs who purchased membership in NCRA since March 1, 2014.

149.   The Stenographic Certification Market is separate and distinct from the Stenographic Membership Market.

150.   At all times during the relevant period, NCRA has had market power in the Stenographic Certification Market, as there are no reasonable substitutes for NCRA certification available to CCRs who have completed NCRA certification programs.

151.  To maintain NCRA certification, NCRA CCRs are required to complete CEUs which ensure that NCRA CCRs remain knowledgeable and competent in their work.

152.  NCRA membership annual dues are collected in addition to fees for certification and continuing education costs thus increasing the expense of obtaining and maintaining certification.

153.  Plaintiffs and CCRs have been forced to purchase annual membership in NCRA in order to continue to use their NCRA certifications and avoid having them invalidated and canceled.

154.  Because thousands of NCRA members have bought annual membership in NCRA in order to avoid invalidation of their NCRA certification, NCRA's tying arrangement has had a substantial effect on interstate commerce.

155.  NCRA's tying arrangement has foreclosed competition in the Stenographic Membership Market, resulting in market-wide pricing and product offerings that are not reflective of a competitive market.

156.  There are no procompetitive justifications, judicial or court mandated justifications, or other justifications for NCRA's requirement that CCRs buy annual membership in NCRA in order to maintain their certification.

157.  By conditioning NCRA certification on continuous membership in NCRA and the cost of NCRA's annual membership dues, NCRA has established an

unreasonable restraint of trade that constitutes a violation of 15 U.S.C. §1 under the rule of reason.

158.   As a result of NCRA's violation of 15 U.S.C. §1, Plaintiffs and the Class have paid NCRA supra-competitive prices for membership in NCRA, in addition to paying for continuing education credits to maintain their NCRA certification.

WHEREFORE, Plaintiffs and the Class pray for relief as follows:

A.    An order certifying the proposed Class under Rule 23 and appointing Plaintiffs and the undersigned counsel of record to represent same;

B.    An award of treble damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and injunctive relief under the Clayton Act, 15 U.S.C. §§15 and 26;

C.    An award of damages and exemplary damages, pre-judgment and post-judgment interest, and attorneys' fees and costs; and

D.    Such other relief as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED.**

DATED:  January 3, 2025            SEEGER WEISS LLP
                                   CHRISTOPHER L. AYERS


                              _____
                                    */s/ Christopher L. Ayers*
                                   CHRISTOPHER L. AYERS

55 Challenger Road
Ridgefield Park, NJ  07660
Telephone:  973/639-9100
973/679-8656 (fax)
cayers@seegerweiss.com


ROBBINS GELLER RUDMAN &
    DOWD LLP
STUART A. DAVIDSON
ANNY M. MARTIN
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN &
    DOWD LLP
ARTHUR SHINGLER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiffs and the Class